IN THE CIRCUIT COURT, SEVENTH
JUDICIAL CIRCUIT IN AND FOR
VOLUSIA COUNTY, FLORIDA

CLIFFORD REED, JR., an individual,                    CASE NO.:

        Plaintiff,

v.

BETHUNE-COOKMAN UNIVERSITY, INC.,
a Florida corporation and BETHUNE-COOKMAN
UNIVERSITY BOARD OF TRUSTEES,

        Defendant.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Clifford Reed, Jr., sues Defendant, BETHUNE-COOKMAN UNIVERSITY,

INC., and BETHUNE-COOKMAN UNIVERSITY BOARD OF TRUSTEES, and alleges:

1. This is an action for relief and damages that exceed $15,000.00.

2. CLIFFORD REED (hereinafter referred to as "Mr. Reed") is a resident of Volusia

County, Florida and the former head basketball coach of BETHUNE-COOKMAN

UNVIERSITY, INC.

3. BETHUNE-COOKMAN UNIVERSITY, INC. (hereinafter referred to as "BCU") is a

Florida non-profit corporation acting as an accredited university and NCAA member with its

principal place of business in Daytona Beach, Volusia County, Florida.

4. BETHUNE-COOKMAN UNIVERSITY BOARD OF TRUSTEES, (hereinafter referred

to as "The Trustees"), is the governing board of Bethune-Cookman University, an institution of

higher education located in Daytona Beach, Volusia County, Florida.

5. Mr. Reed started his career with BCU's Athletic Department fourteen (14) years

1

ago. He became head basketball coach ten (10) years ago.

6.  The contract in question and the acts taken on, took place in Volusia County, Florida. Thus, venue lies in Volusia County, Florida. Further the acts complained of herein occurred in Volusia County, Florida.

7.  In 2010, Mr. Reed had been employed as head basketball coach pursuant to a contract. A copy of Plaintiff's most recent employment agreement is attached hereto as Exhibit "A".

8.  During the ten (10) years of serving as head coach, Mr. Reed's basketball program was never investigated, criticized, or received any sanctions by any sanctioning body including the Mid Eastern Athletic Conference (MEAC) of the NCAA. Neither Mr. Reed individually nor his program has ever received an "unsatisfactory" evaluation by BCU or any other entity. At all times during Mr. Reed's tenure as head basketball coach, Mr. Reed's athletes met or exceeded the NCAA's Incentives and Disincentives Program standards of the Academic Progress Report filed by BCU.

9.  On June 27, 2011, Mr. Reed was informed by letter that he was being terminated immediately. A copy of the termination letter is attached hereto as Exhibit "B".

10. Bethune-Cookman University terminated Mr. Reed because it claimed that he failed to cooperate and because it alleged insubordination.

11. Plaintiff performed all conditions precedent to be performed by Plaintiff or the conditions have occurred.

## COUNT I – ERISA

12. Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

13. This action arises under Sections 502 and 510 of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 & 1140 (1974).

14. Plaintiff was wrongfully terminated which deprives Plaintiff of retirement benefits in violation of Section 1140, of ERISA.

15. Plaintiff is a participant in Defendant BCU's retirement plan (the "Retirement Plan").

16. Plaintiff is an exemplary employee, and had received positive performance evaluations throughout his many years of employment.

17. Plaintiff was terminated without cause for insubordination, a term so vague on its face and as applied that its use by BCU has been criticized by a consultant hired by the Trustees.

18. Defendant's actions interfered with Plaintiff's protected rights under the Retirement Plan in violation of 29 U.S.C. § 2250

WHEREFORE, Plaintiff requests the following relief:

a.   An order awarding Plaintiff the benefits to which he is entitled under the Retirement Plan;

b.   A declaratory judgment that the practices complained of are unlawful and void;

c.   An award of pre-judgment and post judgment interest on all amounts awarded pursuant to Plaintiff's claims;

d.   An award of all costs and attorney's fees pursuant to 29 U.S.C. § 1132(g)(1);

e.   An order requesting the immediate re-instatement of Plaintiff to his former position;

f.   An award for all compensatory damages incurred by Plaintiff; and

g.   For such further relief as the court deems just and proper.

3

## COUNT II – DEFAMATION

19. Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

20. This is an action against Defendant for defamation.

21. Plaintiff was employed by Defendant, BCU.

as a head coach and he had an outstanding reputation at BCU and within the community as a good citizen and excellent head coach.

22. BCU's employees, acting within the scope of their employment, knowingly made and published false accusations to other employees of Defendant and other persons concerning Plaintiff's employment record and have accused Plaintiff of obstructing a criminal investigation. These false statements were made in bad faith and for no legitimate business purpose and were known to be false and were made with reckless disregard for the truth and there was actual malice on the part of Defendant's employees and agents in the making of these false accusations. There was no good business reason for the publication of the false accusations.

23. As a result of the above described defamation, Plaintiff has suffered harm to his personal and business reputation.

24. Defendant, BCU, ratified and condoned the false accusations and defamation by its employees and agents and is liable, not only for the payment of compensatory damages, but also for punitive damages.

25. During Mr. Reed's tenure at BCU, President Reed described Mr. Reed to members of the academic community as an outstanding head basketball coach.

26. Defendant has further informed the media, local, state, national and international

4

including but not limited to the Daytona Beach News-Journal, ESPN, The Baltimore Sun and numerous other media outlets that Mr. Reed obstructed a criminal investigation, was uncooperative and insubordinate and he was terminated as a result.

27. BCU's termination of Mr. Reed has been highly publicized by the media.

28. The statements made by the Defendant were false, were known to be false when made or were made with reckless disregard for the truthfulness of such statements.

29. As a result of the Defendants' defamation, Mr. Reed's personal and professional reputation has been destroyed and he is unable to obtain comparable employment elsewhere.

30. As a further result of the Defendants' defamation, Mr. Reed has been personally humiliated and has suffered emotional distress and mental anguish.

WHEREFORE, Plaintiff, CLIFFORD REED, demands judgment against Defendant, BETHUNE-COOKMAN UNVIERSITY, INC., for compensatory damages, prejudgment interest, costs and such other and further relief as this Court deems just and proper, reserves the right to seek punitive damages and demands trial by jury of all issues triable as a matter of right by jury.

## COUNT III – BREACH OF EMPLOYMENT CONTRACT

31. Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

32. This is an action for damages against Defendant, BCU, for breach of Mr. Reed's employment contract.

33. Mr. Reed was employed for the 2010 – 2011 academic year under a contract. Mr. Reed's contractual compensation included salary, medical insurance, life insurance, a retirement plan and leave time. A true and correct copy of Mr. Reed's employment contract is attached hereto as

5

Exhibit "A" and incorporated herein by reference. Mr. Reed's employment contract automatically rolled over for a five (5) year period and was to expire in 2015.

34. Paragraph 2 of Mr. Reed's contract provides, in pertinent part, that BCU is obligated to notify all non-first year professors "in writing, not later than January 15, if the contract will not be renewed."

35. BCU did not provide written notice to Mr. Reed on or before January 15, 2011, that his contract would not be renewed for the 2011-2012 academic year.

36. On June 27, 2011, BCU gave Mr. Reed written notice that his employment was terminated effective immediately.

37. BCU breached Mr. Reed's contract by terminating his employment despite its failure to provide written notice of non-renewal on or before January 15, 2011.

38. As a direct and proximate result of BCU's breach, Mr. Reed has suffered, and will continue to suffer, loss of income and benefits.

39. Mr. Reed has been required to retain the services of the undersigned attorney and has obligated himself to pay reasonable attorneys' fees and court costs to bring this action, for which he is entitled to recover pursuant to § 448.08, Fla. Stat.

WHEREFORE, Plaintiff, CLIFFORD REED, demands judgment against Defendant, BETHUNE-COOKMAN UNIVERSITY, INC., for compensatory damages, special damages, prejudgment interests, costs and such other and further relief as this Court deems just and proper, and demands trial by jury of all issues triable as a matter of right by jury.

## COUNT IV- WRONGFUL TERMINATION STEMMING FROM DUE PROCESS VIOLATION BY BCU

40. Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

41. This is an action against Defendant, BCU, for violation of due process in terminating Mr. Reed.

42. BCU's Faculty Handbook states that faculty members have "[t]he right to due process in cases of dismissal of tenured faculty or faculty who are on term contracts" (Faculty Handbook, p. 13).

43. Mr. Reed was on a term contract member when BCU terminated his employment.

44. The Faculty Handbook "incorporates the Faculty By-Laws ..." (Faculty Handbook, p. 3), which states "[t]he standards set forth by the American Association of University professors, as published in the AAUP policy documents the Reports, 1973 edition and subsequent revisions, when not in conflict with the University Charter, the bylaws of the Board of Trustees, or the Faculty Handbook, shall be binding in matters of academic freedom, appointments, tenure, faculty responsibilities, and accountability" (Faculty Handbook, p. 75; Faculty Association Bylaws; Article 1, Section 2).

45. The AAUP Policy Documents and Reports include the 1940 Statement of Principles on Academic Freedom and Tenure (the "1940 Statement"). The 1940 Statement provides, in pertinent part, "[t]ermination for cause of a continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment, should, if possible, be considered by both a faculty committee and the governing board of the institution. In all cases where the facts are in dispute the accused teacher should be informed before the hearing in writing of the charges and should have the opportunity to be heard in his or her own defense by all bodies that pass judgment upon the case. The teacher should be permitted to be accompanied by an advisor of his or her own choosing who may act as counsel. There should be a full stenographic record of the hearing available to the parties concerned ..."

7

46. In terminating Mr. Reed, BCC denied him all of the academic due process he was entitled to, including but not limited to:

    a. he was accused and dismissed without a written complaint being filed against him;

    b. he was accused and dismissed without having received specific written charges, he was accused generally of insubordination, a term criticized by a consultant hired by the Trustees for being vague;

    c. there was no opportunity for Mr. Reed to review the allegations against him prior to his dismissal;

    d. he was accused and dismissed without having been afforded any opportunity to confront and cross-examine adverse witnesses;

    e. no committee was formed to hear evidence from both sides prior to the action to dismiss him;

    f. there was no committee established as described in BCU's Faculty Handbook;

    g. there was no written committee report as required by the Faculty Handbook;

    h. no hearing was held with regard to any specific charge of failure to cooperate and being insubordinate;

    i. no attempt was made within BCU to test the truth of the allegations against him;

47. As a result of BCU's denial of Mr. Reed's academic due process rights, Mr. Reed was terminated without adequate cause and has suffered, and will continue to suffer, loss of income and benefits.

8

WHEREFORE, the Plaintiff, CLIFFORD REED, demands judgment against the Defendant, BETHUNE-COOKMAN UNIVERSITY, INC., for compensatory damages, prejudgment interest, costs and such other and further relief as this Court deems just and proper, and demands trial by jury of all issues triable as a matter of right by jury.

## COUNT V – COVENANT OF GOOD FAITH AND FAIR DEALING

48. Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

49. Into the employment relationship between Plaintiff and Defendant employer, the law of the State of Florida implied a covenant of good faith and fair dealing, which required, inter alia, the following:

(a) Each party in the relationship must act with good faith toward the other concerning all matters related to employment;

(b) Each party in the relationship must act with fairness toward the other concerning all matters related to the employment;

(c) Neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

(d) Defendant employer would similarly treat employees who are similarly situated;

(e) Defendant employer would comply with its own representations, rules, policies, and procedures in dealing with Plaintiff;

(f) Defendant employer would not terminate Plaintiff in an unfair manner; and,

(g) Defendant employer would give Plaintiff's interests as much consideration as it gave its own interests.

50. Plaintiff's employment contract was written and some of the terms of his contract were:

(a) Throughout his career with BCU the University maintained policies and practices which rewarded his exemplary performance with pay raises, increased benefits, promotions and assured the Plaintiff that he would not be terminated except for just cause. These policies and assurances created an on-going incentive in Plaintiff to develop and maintain a career commitment to Defendant employer and to forego employment opportunities with other employers.

(b) In exchange for services, Plaintiff would receive salary and other benefits from Defendant employer.

(c) The parties agreed to treat each other in accordance with the Constitution and the laws of the State of Florida and the United States;

(d) Plaintiff would have a job so long as he performed his job in a satisfactory manner and discipline or discharge, if any, would occur only for just cause, and only in accordance with the University's policies and practices, Plaintiff's employment agreement as well as the specific assurances, made to Plaintiff.

51. Defendant breached and violated the covenant of good faith and fair dealing in terminating Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant for re-instatement and prejudgment interests, attorneys fees, costs, and such other relief as the Court may deem appropriate due to the breach of Defendants of their actual and implied contractual obligations to Plaintiff and demands jury by trial.


## COUNT VI- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

61.     Plaintiff realleges and incorporates paragraphs 1 through 11 of the complaint.

72.     Defendant, Bethune Cookman University Board of Trustees (The Trustees) is the governing body of Bethune-Cookman University.

73.     The Trustees are in charge of overseeing decisions of BCU's administration regarding termination of employees and the manner in which the administration treats faculty and employees.

74.     The Trustees have failed to carry out any meaningful oversight of BCU's administration.

75.     The Trustees deliberated over the fate of Plaintiff in this case and voted to terminate his employment without affording Plaintiff due process.

76.     The Trustees did not afford Plaintiff an opportunity to address any alleged issues, and thereby acted in an arbitrary and capricious manner. The Trustees approved the termination of Plaintiff for "insubordination", a term unlawfully vague both facially and as applied.

77.     The Trustees failed to provide the mandated oversight in the process of considering any claims against Mr. Reed and are in breach of their basic obligations.

78.     The Trustees have acted in bad faith, in a wanton or reckless manner, and have shown a malicious purpose in their dealings with Plaintiff.

79.     As a direct and proximate result of the aforementioned wrongful conduct of the Trustees, Plaintiff has lost substantial employment wages and benefits, has become mentally upset, distressed and aggravated and has suffered other incidental and consequential damages and losses.

WHEREFORE, Plaintiff, respectfully requests the award of damages, court costs, and a trial by jury.

12

## TRIAL BY JURY

Plaintiff respectfully requests a trial by jury on all counts.

Submitted this ___15___ day of September, 2011.

DIEGO HANDEL, ESQUIRE
149 S. Ridgewood Avenue
Suite 220, Box N
Daytona Beach, FL 32114
Fla. Bar No. 384429
Telephone: (386) 252-4493
Facsimile: (386) 248-2237
E-mail: dhandel@bellsouth.net
Attorney for Plaintiff

## VERIFICATION

BEFORE ME, the undersigned authority, this _11_ day of September, 2011 personally appeared, Clifford Reed, Jr., personally known to me or who has produced _FL Al n7ecit c b1_ as identification, who being first duly sworn, says that he is the Plaintiff in the above-styled cause, that he has read the foregoing Complaint, and has personal knowledge of the facts and matters therein set forth and alleged; and that each and all of these facts and matters are true and correct to the best of his knowledge and belief.

CLIFFORD REED, JR., Plaintiff

Notary Public
Printed name of Notary
My commission number
My commission expires

DIEGO HANDEL
Notary Public, State of Florida
My Comm. Expires August 13, 2012
Commission No. DD 791310

14