Confidential        Page 1        6/2/2005

# Bethune-Cookman College
## Agreement for Employment of Head Coach

This Agreement Of Employment is entered into this 25th day of January, 2005, by and between Bethune-Cookman College (hereinafter referred to as the "College") and Clifford Reed, Jr. (hereinafter referred to as "Coach Reed").

In consideration of the mutual covenant contained below, the above parties agree as follows:

General Performance

1. Coach Reed shall diligently perform, on a full-time basis the duties and responsibilities of the position of head men's basketball coach of the Bethune-Cookman College intercollegiate men's basketball coach team.

2. In addition, Coach Reed accepts a non-tenured appointment as a staff member of the College in the Department of Intercollegiate Athletics and shall report directly to the director of athletics. The President, appropriate sector vice-president and director of athletics on an annual basis, will approve specific assignments, however these standard job responsibilities shall govern this agreement:

   a. Coach Reed shall perform all job duties in strict compliance with NCAA rules and regulations (ie. Academic Progress Rate of at least 925 for basketball and compliance to the 40-60-80 degree requirements per each student athlete), College policies and procedures and strict compliance with Mid-Eastern Athletic Conference rules and regulations and any other conference or agency that the College may affiliate with.

   b. Coach Reed's duties shall include recruiting players; analyzing performance and instructing players in game strategies and techniques to prepare them for athletic competition; observing players while they perform to determine the need for individual or team improvement; coaching players individually or in groups; demonstrating men's basketball coaching techniques; overseeing daily practice of players to instruct them in areas of deficiency; and determining strategy during games independently or in conference with coaching staff members.

   c. Coach Reed shall also be responsible for supervision and discipline of players at College facilities, in the community and during team travel; discipline of athletes not following academic requirements, such as attending classes, study hall, tutoring sessions, et cetera; planning and directing training of men's

EXHIBIT A

Confidential                     Page 2                            6/1/2005

presents a positive public image at games and while engaged in team- or College related travel. The academic performance of the men's basketball coach team shall be a major responsibility of Coach Reed. He will be required to work directly with the academic coordinator, faculty athletics representative, provost and director of athletics to ensure that the graduation rate of the student-athletes in the men's basketball coach program will not cause penalization of scholarships via the NCAA's Incentives and Disincentives Program concerning the Academic Progress Report annually filed by the College. Unsuccessful academic progress of student-athletes in the men's basketball coach program can be cause for an unsuccessful evaluation and could result in termination.

d. Coach Reed shall be responsible for: budgeting and administrative operation of the men's basketball coach program in strict compliance with NCAA rules and regulations, College policies and procedures, and policies of the Mid-Eastern Athletic Conference; managing the men's basketball coach program within its approved budget; employment recommendations for assistant coaches and other staff in strict compliance with College policies and procedures; supervising assistant coaches and other staff in strict compliance with College policies and procedures; supervising assistant coaches and other men's basketball coach program staff; and educating assistant coaches, staff and boosters about College, NCAA and Mid-Eastern Athletic Conference rules and regulations and the rules and regulations of any conference with which the College is affiliated.
Coach Reed shall also ensure the men's basketball coach coaches and staff's presentation of a positive image at games and in the community and while engaged in team or College related travel.

d. Coach Reed shall, in addition to his coaching duties, be responsible along with the director of athletics for fund-raising for the men's basketball coach program, be available for public service duties, and assist in public relations activities as directed by the President, Vice-President for Administration and Finance and the Director of Athletics. These include, but are not limited to, public appearances, speaking engagements, fund-raising activities, academic promotions, receptions, meetings, alumni functions, booster club activities and College development activities. Coach Reed is also aware that the scheduling of guarantee games is a major part of this responsibility and agrees to work with the director of athletics to generate a minimum of $200,000 in guarantees to support the men's basketball program. These funds shall be in addition to the regular home schedule approved by the director of athletics.

e. Coach Reed agrees that he shall not use his position as head men's basketball coach for personal benefit except for personal benefit approved in writing by the College, which shall not be unreasonably withheld or delayed in the exercise of the College's reasonable business judgment, provided that Coach Reed meets the prior consent requirements of this agreement and all requirements of the NCAA. This includes, but is not limited to, any and all contracts for the purchase of goods and services for the College's men's basketball program, soliciting and/or accepting private employment,

consultation, gifts, gratuities, and serving on advisory boards, including those of athletic sporting goods companies, as the same may relate to Coach Reed's service under this agreement. Any violation of this provision shall be considered a conflict of interest and/or a violation of NCAA regulations and cause for immediate termination with forfeiture of all rights and benefits under this agreement.

f.  Coach Reed agrees to report earnings from all sources during any fiscal year covered by this contract to the President of the College through the Athletic Director to the extent required by NCAA and or Mid-Eastern Athletic Conference rules and regulations in effect during any part of any contract year.

3.  Coach Reed shall work full time for the College and shall also perform such other and selected duties as specified from time to time by the President, appropriate sector vice-president and director of athletics of the College. Unless otherwise agreed, Coach Reed shall devote all of productive time to duties outlined in this Agreement and shall not engage in any other gainful employment without written consent of the College.

4.  Coach Reed agrees to abide by the rules, policies, staff handbook and requirements of the College, the constitution, bylaws and rules and regulations of the National Collegiate Athletic Association and the constitution, bylaws and rules and regulations of any conference with which the College may be affiliated.

Term

5.  The term of the Agreement shall commence on July 1, 2005 and terminate on June 30, 2010 unless earlier terminated as provided herein. Annually, in the event that Coach Reed receives a satisfactory evaluation of his job performance and/or coaches the men's basketball team to 16 victories, Coach Reed will automatically receive a one year rollover (renewal) of the terms of the contract. This option for one additional year shall be exercised in writing by the college to Coach Reed at the beginning of the ensuing fiscal year. At the end of the option year, the College shall have the right to issue a new contract.

Termination

6.  Where the annual performance evaluation of Coach Reed indicates unsuccessful performance, at the option of the College, Coach Reed may be terminated upon written notice from the President of the College or designee. This evaluation may occur annually or bi-annually at the discretion of the College. Schedule "A" is attached with one (1) as the lowest rating and ten (10) as the highest. Unsuccessful performance means a rating of six (6) or below on any of the items listed on Schedule "A".

In the case of termination for unsuccessful evaluation, or for a decision based on the programmatic direction of the College, the College shall have the right and option to negotiate a buyout of the remaining term of the agreement or two (2) base salaried and year of the contract (whichever is earlier) and/or reassignment within the college until the terms of the contract have concluded. Bonuses and incentives are the property of the College and are not obligated under these

Confidential          Page 4                                    6/1/2005

circumstances. If Coach Reed is terminated and the remaining balance of the contract has not expired, the contract will become null and void once Coach Reed becomes employed again in the athletic arena or until such time that the contract expires. Coach Reed shall be open and forthright as it relates to employment beyond Bethune-Cookman College and agrees to provide tax statements and a legal affidavit verifying that no other employment has commenced prior to the end of the remainder of the contract with Bethune-Cookman College. Coach Reed fully agrees that failure to diligently seek other employment or other compensation, and failure or failure to accept reasonable and comparable employment in the field of athletics shall terminate the College's obligation to make salary payments during the payout period.

Upon termination of employment for any reason, the College mandates immediate possession of all equipment, credit and phone cards, uniforms and intellectual properties created and/or utilized in the performance of the duties and responsibilities of employment under this agreement. This shall include all recruiting files, lists, diskettes, evaluation forms, game and practice films, recruiting videos, hard drives, computers, video and film projectors and any and all forms of media used in the job performance. Failure to immediately produce such items in good and acceptable working order upon request by College officials may result in prosecution and withholding of any benefits and payments entitled to Coach Reed upon termination.

7.     The college shall have the right to place the Coach Reed on notice of probation and/or possible termination should the evaluation reveal a status of unsuccessful performance or, if the College deems that a change should occur in the best interest of the program.

8.     This Agreement may be terminated immediately by the College upon written notice in the following situations:

   a.   Violation of any material rules or regulations of the NCAA or conference with which the College is affiliated, including, but not limited to the Mid-Eastern Athletic Conference;

   b.   Violation of any College rule or policy, including, but not limited to, the College's Personnel Policies Handbook;

   c.   Coach Reed may be terminated for cause. As used herein, "cause" includes any failure by Coach Reed to conform his conduct to the highest standards of decency, honesty, morality and good citizenship. "Cause" also includes any conduct that would constitute a violation of the laws of the State of Florida or the laws of the United States of America. It is specifically agreed that if, during the term of this agreement, College becomes aware that the Coach Reed is in violation of this provision or was at any time involved in violations of this provision, including NCAA policies, procedures or legislation applicable to an employer of the Coach Reed (including a previous employer), which at the time of such employment was a member of the NCAA, the College may take one or more of the following actions as it deems appropriate: (a) termination of employment (b) suspension with or without pay for such time as the College shall determine; (c) modification of duties; or (d) reassignment to other College employment. If this agreement is terminated under this provision, Coach Reed shall forfeit all employment rights and benefits provided by this contract including salary compensation and other remuneration hereunder. The

Confidential           Page 5           6/1/2005

term "violation" as used herein shall include, but not be limited to, personal action by Coach Reed that violated any of the laws, policies, rules or regulations contained in this paragraph. Such shall be the basis for termination.

If terminated for cause, Coach Reed shall be entitled to receive compensation through the last day of the calendar month in which employment was terminated.

9. Termination of Coach Reed's employment under this Agreement shall not release either Coach Reed or the College from obligations hereunder arising or accruing through the date of such termination nor from the provisions of paragraphs 14 through 19 of this Agreement. Termination of Coach Reed's employment under this Agreement for a breach of ethics and/or violations of NCAA, Mid-Eastern Athletic Conference or college rules and regulations terminates and releases the College from all of its obligations hereunder arising or accruing after the date of such termination including, but not limited to, any of its obligations under paragraph 10, 11 and 12 below. On notice of termination of or by Coach Reed, the College has the power to suspend Coach Reed from all duties on the date notice is given, and to immediately require return of all professional documentation and confidential information as described in this Agreement.

In the event that Coach Reed elects to voluntarily separate from College service prior to the expiration of this agreement, as it may be amended, the College shall be entitled to payment from Coach Reed of an amount equal to one year's salary as liquidated damages. In the event that legal action becomes necessary for the College to enforce its rights under this provision, the College shall also be entitled to payment from Coach Reed for its reasonable attorney's fees and costs.

Compensation

10. Base Salary. The College shall pay Coach Reed a base salary annually during the course of this agreement in the following amounts:
2005-06 $70,000 base salary, plus a minimum of $7,500 for appearances on the BCC Men's basketball TV Show.

2006-10 Percentage increase authorized by the Board of Trustees plus minimum of $7,500 for appearances on the BCC Men's basketball coach TV Show.

Compensation of base salary shall be made payable in 12 equal monthly installments. All payments of Coaches TV Show fees shall be made within 45 days of the taping of the final show and all payments shall be subject to withholding and other applicable taxes.

11. Bonuses, Incentives, Additional Compensation. See Schedule "B" if applicable.

12. Benefits. Coach Reed shall be entitled to enjoy the same benefits and privileges as are conferred upon any other employees of comparable position within the College. These benefits are set out in the Staff Handbook. Coach Reed acknowledges that the applicable benefits are provided by the College and may be changed, increased, decreased or eliminated from time to time at the College's sole and absolute discretion.

13.  **Right to Offset.**    If Coach Reed ceases to be employed by College for any reason, Coach Reed authorizes College to offset against any compensation, by salary or commission or bonuses and incentives, which College would otherwise owe or pay to Coach Reed, all amounts owed to College by Coach Reed because of overdraws, loans by the College, or for any other reason, regardless of whether or not Coach Reed's payment to College would otherwise be due at the time of such cessation of employment.

### Confidential Information; Covenant Not to Compete; and Related Matters.

14. Coach Reed recognizes and acknowledges that the Confidential Information (as hereafter defined) constitutes valuable, secret, special, and unique assets of the College and is not readily assessable to the College's competitors. Coach Reed shall be deemed the bailee thereof for the use and benefit of the College and shall safely keep and preserve such property, except as disposed of in the normal business operations of the College. Coach Reed covenants and agrees that, during the term of this Agreement and for a period of six (6) months following termination (whether voluntary or involuntary), Coach Reed will not disclose the Confidential Information regarding the College's athletic programs. It is expressly understood and agreed that the Confidential Information, all copies thereof, and other materials furnished to Coach Reed by the College, used by Coach Reed on its behalf, or generated or obtained by Coach Reed during the course of Coach Reed's employment, is the property of the College and must be returned immediately to the College upon the earlier termination or demand. The term Confidential Information means each, every, and all written documentation related to the College, whether furnished by the College or compiled by Coach Reed, not generally accessible to the public, including but not limited to: (1) lists of alumni, advertisers, and the Colleges accounts and records pertaining thereto; (2) recruit lists, prospect lists, rating information, performance reports and statistics, student information, and all types of written information customarily used by the College or available to Coach Reed; (3) play books; (4) all records, files, manuals, lists of customers, blanks, forms, materials, supplies, computer programs; and (5) other like information known to Coach Reed but not reduced to written or recorded form including the terms and conditions of this contract and any others that Coach Reed may have knowledge of.

Coach Reed further understands and agrees to the fact that the information contained within this document is Confidential Information and that as a part of this agreement Coach Reed is prohibited from discussions about these terms. As a College policy, Bethune-Cookman College does not publicly release salary and contract information to any media outlet and/or individual. Any reproduction and revelations regarding the terms of this agreement by or on behalf of Coach Reed to persons other than the President, Vice-President of Administration and Finance, Director of Athletics and Head Men's Basketball Coach can be construed as a breach of confidentiality and is subject to disciplinary actions, sanctions and possible termination.

15. For a period of six (6) months following the date of termination (whether voluntary or involuntary) of Coach Reed's employment with the College, Coach Reed agrees that he will not work, directly or indirectly, without the express written approval of the College, as an employee, agent, independent contractor, consultant or otherwise for any college, university or institution which competes in the conference with which the College is affiliated including the Mid-Eastern

16. Coach Reed agrees that the College shall have the right to communicate the terms of this Agreement to any third parties, including but not limited to, any past, present or prospective employer of Coach Reed. Coach Reed waives any right to assert any claim for damages against the College or any officer, Coach Reed or agent of the College arising from disclosure of the terms of this Agreement.

17. In the event of the breach or threatened breach of the provisions of Section 13 through 15, the College shall be entitled to injunctive relief as well as any other applicable remedies at law or in equity. Coach Reed understands and agrees that without such protection, the College's athletic programs and business would be irreparably harmed, and that the remedy of monetary damages alone would be inadequate. Should a court of competent jurisdiction declare any of the covenants set forth in this paragraph unenforceable due to unreasonable restriction of duration or otherwise, each of the parties hereto agrees that such court shall be empowered to rewrite such covenants and to grant the College injunctive relief reasonably necessary to protect its interest.

18. Coach Reed acknowledges that the College's investment of time, money and ingenuity in building and maintaining its athletic programs is entitled to protection, and that the number of recruits, athletes, plays and athletic programs falling within the restrictions set forth is this paragraph is extremely small into comparison to the total number of potential recruits, athletes, plays and athletic programs and does not significantly affect Coach Reed's ability to engage in a lawful profession or business to compete fairly with the College. Coach Reed has carefully considered, and agrees that the provisions of this paragraph are fair, reasonable, and not unduly restrictive on Coach Reed, and that Coach Reed has had an opportunity to obtain legal advice before agreeing to these terms.

19. Coach Reed agrees that so long as he is working for the College, he will not undertake the planning or organizing of any business activity competitive with the work Coach Reed performs. Coach Reed agrees that he will not for a period of six (6) months following termination of employment with the College, directly or indirectly, solicit any of the College's employees to work for Coach Reed or another institution, solicit any of the College's students to compete for another educational institution, or solicit any person to compete in an athletic program which competes in the conference with which the College is affiliated.

Coach Reed agrees that he must get expressed written approval from the director of athletics, appropriate sector vice-president, or president before interviewing and/or negotiating with another agency or institution for possible employment opportunities similar in nature to those described in this agreement while this agreement in force. Coach Reed agrees to refer all calls of interest in employment from other organizations and institutions to the athletic director, appropriate sector vice-president or president for acknowledgement and approval before formal contact with Coach Reed can be established.

Other Activities

20. Summer Camp.    Coach Reed may participate in summer camps; however, NCAA, College and Mid-Eastern Athletic Conference guidelines must be observed in formulating such activities and the College must give prior approval in writing. Under no circumstances can the

Confidential          Page 8          6/1/2005

College be committed or held liable for damages caused by camp or employees of the camp unless the College has approved in writing the plans and budget for the camp prior to the camp being advertised. In the case of fulltime 12-month employees, Coach Reed will be required to utilize vacation time and/or administrative leave if he participates in camps outside the control of Bethune-Cookman College.

21. **Consulting.** Subject to governing rules and regulations of the NCAA, the College and the Mid-Eastern Athletic Conference, Coach Reed may enter into consulting agreements with vendors of sporting equipment and merchandise that allows the vendor to use Coach Reed's names and expertise in connection with the development, promotion and sale of their sporting goods products. Coach Reed agrees not to use the names or symbols of the College in connection with such consulting agreements without the prior written approval of the President of The College.

### Miscellaneous

22. **Drug Free Workplace Act.** Coach Reed acknowledges receipt of the College's Drug Free Workplace Policy and Procedure and agrees to abide by the terms of said policy.

23. **Personnel Policies handbook.** Coach Reed acknowledges receipt of the College's Personnel Policies Handbook and agrees to abide by the terms of the policies therein, and any amendments or modifications thereto.

24. **Conflicts.** In the event of any conflict between the terms of this Agreement and the College's Personnel Policies Handbook, as amended and modified, the terms of this Agreement shall control.

25. **Severability.** All agreements and covenants contained herein are severable, and if a court of competent jurisdiction declares any such agreement or covenant to be invalid, the Agreement shall not be interpreted and applied as if the invalid provisions were not contained herein.

26. **Waiver of Breach.** The waiver by either party of a breach of any provision of the Agreement shall not operate or be construed as a waiver of any subsequent breach by the other party.

27. **Entire Agreement.** This Agreement contains the entire agreement of the parties. Coach Reed agrees that this Agreement contains all statements, inducements or representation relied upon by Coach Reed for the execution of this Agreement. All contracts entered into which are dated prior to this Agreement concerning its subject matter are considered null and void. This Agreement may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

28. **Binding Effect.** This Agreement shall be binding on and inure to the benefit of the respective parties and their respective heirs, legal representatives, successors and assigns.

29. **Interpretation.** This Agreement shall not be construed or interpreted in a manner adverse to any party on the grounds that such party was responsibility for drafting any portion of it.

Confidential            Page 9            6/1/2005

30. **Assignment.** Coach Reed agrees that the College may assign this Agreement to any entity in connection with any sale of some or all of the College's assets or subsidiary corporations, or the merger by the College with or into any business entity. Coach Reed may not delegate his performance under this Agreement for personal services to any other person or entity.

31. **Governing Law.** All disputes shall be governed by the laws of the State of Florida. Venue of any action arising out of or interpreting this Agreement or to enforce this Agreement shall be in Volusia County, Florida.

32. **Amendment.** This agreement may be altered, modified or amended, only by written agreement signed by the President of the College, Director of Athletics and Coach Reed.

33. **Waiver of Jury Trial.** Coach Reed and the College hereby knowingly, voluntarily and intentionally waive any right either may have to a trial by jury with respect to any litigation related to or arising out of, under or in conjunction with this Agreement, or Coach Reed's employment with the College.

## NCAA Principles of Ethical Conduct

**NCAA Bylaw 10.01.1 Honesty and Sportsmanship.** Individuals employed by and associated with Bethune-Cookman College or any other NCAA member institution to administer, conduct or coach intercollegiate athletics and all participating athletes shall deport themselves with honesty and sportsmanship at all times so that intercollegiate athletics as a whole, their institutions and they, as individuals, shall represent the honor and dignity of fair play and the generally recognized standards associated with wholesome competitive sports.

**NCAA Bylaw 10.1 Unethical Conduct**

Unethical conduct by a prospective or enrolled student-athlete or an institutional staff member may include, but is not limited to, the following:

1. Refusal to furnish information relevant to an investigation of a possible violation of an NCAA when requested to do so by the NCAA or Bethune-Cookman College;
2. Knowing involvement in arranging for a fraudulent academic credit or false transcripts for a prospective or an enrolled student-athlete;
3. Knowing involvement in offering or providing a prospective or an enrolled student-athlete an improper inducement or extra benefit, or
4. Knowingly furnishing the NCAA or Bethune-Cookman College false or misleading information concerning the individuals' involvement in or knowledge of a violation of matters relevant to a possible violation of an NCAA regulation.

I hereby acknowledge that as a condition of my employment at Bethune-Cookman College I will faithfully comply with all NCAA, conference and Bethune-Cookman College regulations as they relate to my job performance and the general operation of college business. I also understand and accept that breach of the above listed NCAA rules or any others will be factored into my annual performance evaluation and can serve as basis for immediate termination of my employment at Bethune-Cookman College.

In witness of their agreement, the parties have signed this Agreement.

_____ _____Date
"Coach Reed"

Bethune-Cookman College

_____ _____Date
Athletic Director

_____ _____Date
President or Designee

Confidential	Page 11	6/1/2005

Schedule A

Rating 1-10

Coaching Ability                                                             ———
Moral and Ethical Qualities                                                  ———
Recruiting Ability                                                           ———
Knowledge of Rules (NCAA, Conference)                                        ———
Service to College                                                           ———
Supervision of athletes in program                                           ———
Academic performance of student-athletes (includes graduation rate)          ———
Rapport with student-athletes in program                                     ———
Organizational qualities                                                     ———
Professional growth (Clinics, publications, etc.)                            ———
Won-loss record                                                              ———

Total score _____

Successful performance means receiving a minimum rating of 7 on each of the 11 items listed above and/or a minimum total score of 77 with 1 as the lowest rating and 10 as the highest. Unsuccessful performance means a rating of 6 or below on any of the above listed items and/or a total score of 76 or below.

Confidential  
Schedule "B"  Page 12  6/1/2005

Bonuses, Incentives, Additional Compensation

1. **Conference Championship.** If Coach Reed coaches the team to the Mid Eastern Athletic Conference Championship, the College shall pay Coach Reed one month's salary payable within sixty (60) days of winning the Championship. Coach Reed must be employed by the College at the time that team wins the Championship to be eligible for this bonus.

2. **Academic Success.** If at the end of the College's academic year, the team cumulative grade point average based on the immediately preceding fall and spring semester performance is 3.0 or better as verified by the College Registrar, the College shall pay Coach Reed one thousand dollars ($1,000) within sixty (60) days of verification. If the team cumulative average is 2.75 under the same timeline for the academic year, then the College shall pay Coach Reed a bonus of five hundred dollars ($500). Coach Reed must be employed by the College at the end of the spring semester to be eligible for this bonus.

3. **Sports Camp.** The College will cooperate with the Coach Reed in the development of a sports camp. However, the establishment of such a camp by Coach Reed shall be subject to the College's prior written approval. Any additional compensation and/or benefits that the head coach shall receive or be entitled to while employed at Bethune-Cookman College shall be revealed in writing and the College must give the issuance of prior approval in writing. The amount of compensation regarding College operated camps and those events bearing the College name shall be in the sole and absolute discretion of the College and the College must give written approval as to the percentage of any compensation received by Coach Reed.

4. **Automobile, health club and country club contributions.** Coach Reed, without financial involvement of the College, may pursue contributions of automobiles, health club and other memberships provided by third party sponsors, provided that such contributions shall be subject to the College's prior written approval which shall be in the sole and absolute discretion of the College.

5. **Coach of the year.** If Coach Reed is named Mid-Eastern Athletic Conference Coach of the Year then the College will award the Coach Reed an honorarium of one thousand dollars ($1,000) within sixty (60) days of the honor.

6. **Post Season Play.** Coach Reed shall be eligible to receive a salary bonus of one month's salary for each round that Coach Reed's team advances within the NCAA national tournament.

7. **Coaches TV Show.** The College shall own the exclusive rights to all television shows, radio broadcasts and internet streaming and web casts of College teams during practice, training and competition. In the event that a coach's show is produced, the Coach Reed shall be entitled to a minimum appearance fee of $7,500 annually at the conclusion of the production season of said show. The appearance fee shall be based on the College and Coach Reed's ability to solicit and contract advertisers and sponsors. The appearance fee shall be paid upon receipt of sponsorship dollars and affidavits of performance to college by the broadcast networks if necessary.

Schedule "B" was updated on September 23, 2003 and effective immediately.

 Bethune – Cookman University

CONFIDENTIAL

Bethune-Cookman University
Facsimile Personnel Action Form
Annual Rate Change – October 2010
Class: Staff

Effective Date: 10/1/10
Name: Reed, Clifford
Rank – Title: Head Coach Men's Basketball
Department: Basketball Men
GL Account Number: 9885 9885 0000

Current annual Salary: 74,263.00
Current Monthly Salary: 6,188.58
Current Hourly Rate:

New Annual Salary: 76,490.89
New Monthly Salary: 6,374.24
New Hourly Rate:
Memo:

Approval: _____ Date: 11/15/10
Executive Vice-President/CFU/COO, Finance & Administration

Approval: _____ Date: _____
Office of Sponsored Programs (if applicable)

1/13/11
NK

Received By
DEC 06 2010
Human Resources

# DATA SHEET

| (001) LAST NAME | (002) FIRST NAME | (003) MIDDLE INITIAL | (004) SOCIAL SECURITY # | (015) Race |
|---|---|---|---|---|
| Reed JR. | Clifford | | 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 | ☑ (B) Amer. Black<br>☐ (W) Amer. White<br>☐ (I) Amer. Indian<br>☐ (A) Amer. Asian<br>☐ (H) Amer. Hispanic<br>☐ (O) Other – Non Citizen |
| (005) CURRENT MAILING ADDRESS | (006) CITY | (007) STATE | (008) ZIP | |
| 1520 3rd Street | Daytona | FL | 32117 | |
| (010) DOB – month/day/year | (011) Sex (M/F) | (012) US Citizen (Y) or (N) | (009) TELEPHONE NUMBER | |
| 04-12-65 | M | | (386) 238-7843 | |
| | | | (013) Spouse: (L. Name/ F. Name/ M. Initial) | (014) No. of children at home |
| | | | Reed, Vera I. | 1 |

## Notify In Case of Emergency

| (020) Name (Last, First MI) | | (016) Physical Handicap |
|---|---|---|
| Reed, Vera I. | | ☑ None<br>☐ Wheel Chair<br>☐ Visual<br>☐ Speech<br>☐ Hearing<br>☐ Other |
| (021) Address (If same as yours leave blank) | (024) Working Dept Budget No. | |
| | | |
| (022) Telephone (If same leave blank) | (025) Campus Address: Room # | |
| | GYM (MODEF) | |
| | (026) Campus Telephone Number | (017) Military Status |
| (023) Relationship | 481-2214 | ☐ Obligation not completed<br>☑ Obligation Completed<br>☐ No obligation |
| Wife | (027) Date of Hire (Month/Year) | |
| | June 1997 | |

## Personnel Use Only

| (032) Pay Grade | (033) EEO Code | (028) Working Dept. Name | (018) Marital Status |
|---|---|---|---|
| | | | ☐ Single<br>☑ Married<br>☐ Married Student Spouse<br>☐ Separated<br>☐ Divorced<br>☐ Widowed |
| (034) Begin Date in Current Position | (035) Probationary Date (month/day) | (029) Campus Address: Building Name | |
| | | (030) Position Title | |
| (036) Anniversary Date (month/day) | (037) Tenure Code (Faculty only) | (031x) Supervisor (Supervise salaried employees) | |
| (038) Ten. Date | (039) Years of Service Code | ☐ YES ☐ NO | (019) Highest Degree |
| (040) Termination Date | (041) Termination Code | | ☐ Date degree completed 1992<br>☑ Bachelor ☐ Masters ☐ Doctorate<br>☐ If attended college but no degree insert 12 yrs + yrs. of college<br>☐ No college insert years thru last school grade completed ____ |
| (042) LOA Begin Date | (043) LOA End Date | BETHUNE-COOKMAN COLLEGE<br>Founded 1904 | |

# BETHUNE-COOKMAN COLLEGE
## Personnel Action Form

CONFIDENTIAL     RECEIVED CONFIDENTIAL     JAN 19 2010     PAYROLL

- [x] Staff
- [ ] Faculty
- [ ] Adjunct
- [ ] Student (Work Aid)

| Last Name | First Name | MI | Social Security Number | Position Number |
|---|---|---|---|---|
| REED | CLIFFORD | SR | | |

| Effective Date | Department Name | Fund | Account | Prog |
|---|---|---|---|---|
| 1-5-10 | Athletics – Men's Basketball | | | |

| Check Action Desired | ✓ | Check Selection | Complete Sections | ✓ | Check Selection | Complete Selection |
|---|---|---|---|---|---|---|
| | | Hire | 1,2 | ✓ | Title Change Only | 3,7 |
| | | Classification Change | 2,3,7 | | Separation | 4 |
| | | Transfer Promotion | 2,3,7 | | Leave of Absence (LOA) | 5 |
| | | Rate Change | 2,7 | | Sabbatical | 5 |

| Section 1. Hire | ✓ | Check Selection | Position Title | Full Time | Hours Per Week |
|---|---|---|---|---|---|
| | | New Employee | | Part Time | |
| | | Rehire/Reinstated | | Temporary | |
| | | Return to Work | Employee Class | Benefit Category | Leave Category |
| | | Sabbatical Replacement | | | |
| | | Other | | | |

| Section 2. Rate Change | ✓ | Check Section | Hourly | Salaried | 9mos | 10mos | 11mos |
|---|---|---|---|---|---|---|---|
| | | Rate | | | | | |
| | | Merit | | | | | |
| | | Promotion | Current Hourly Rate | | New Hourly Rate | | |
| | | Annual Increase | | | | | |
| | ✓ | One Time Only Pay | Current Monthly Annual Rate | | New Monthly Annual Rate | | |
| | | Stipend | 15,000 | based on incentive re: guarantee game scheduling annual additional payment | | | |
| | | Other | Stipend Total | Monthly Rate | # of Payments | Begin Date | End Date |
| | | | | | | Feb 1, 2010 | |

| Section 3. | ✓ | Check Selection | Dept From | | | Department to | | |
|---|---|---|---|---|---|---|---|---|
| | | Transfer | | | | | | |
| | | Promotion | Fund | Acct | Prog | Fund | Acct | Prog |
| | | New Position | | | | | | |
| | | Title Change | | | | | | |
| | | Other | Current Job Title | | | New Job Title | | |

| Section 4. | ✓ | Check Selection | Last Day Worked | Pay Through | Vacation Hours | Sick Hours |
|---|---|---|---|---|---|---|
| | | Voluntary Resignation | | | | |
| | | Involuntary Separation | | | | |
| | | Official Retirement | Forwarding Address | | Forwarding Phone # | |
| | | Military Training (Call HR) | | | | |
| | | Deceased | | | | |
| | | Other: | | | | |

Received By JAN 21 2010 Human Resources

Received By FEB 19 2010 Human Resources

| Section 5. Remarks Special Instructions | Full Year Sabbatical Half Pay | Other Cc Payroll Dbase 2/23/10 |
|---|---|---|
| | Half Year Sabbatical Full Pay | Cathy A. Washington |

| Section 6. Approvals | Budget Supervisor | Sector Vice President | Vice President Fiscal Affairs | Employment Human Resources |
|---|---|---|---|---|
| | | | | |

| Section 7. Employee Signature | | 1/19/10 | |
|---|---|---|---|



# BETHUNE-COOKMAN UNIVERSITY

Founded in 1904 by Dr. Mary McLeod Bethune     Trudie Kibbe Reed, Ed.D., President

July 23, 2008

OFFICE OF HUMAN RESOURCES MANAGEMENT

Clifford Reed, Jr.
1520 5th
Daytona Beach, FL 32117

Dear Clifford Reed, Jr.:

Bethune-Cookman University is pleased to offer you a staff position effective 7/1/2008 through 6/30/2009 as Coach - Head, in Athletics - Men's Basketball department.

Compensation will be at the base rate of $6,188.58 per month, not to exceed $74,262.96 per year per E. Dean Montgomery, Executive Vice President - Finance and Administration/Chief Operating Officer.

You will be subject to an annual Performance review by your immediate supervisor. The employment is at-will and can be terminated with or without cause by either party. If you accept this letter of appointment, please return a signed copy of this letter to the office of Human Resources Management before 5:00 p.m. August 1, 2008.

Very truly yours,

*Cathy D. Washington*
Ms. Cathy D. Washington
Director of Human Resources Management

Never Received Signed Letter of Appointment from Employee

Xc: Personnel File

_____     _____
(Signature)     (Date)

*SUSTAINING A LEGACY OF FAITH, SCHOLARSHIP AND SERVICE*

640 Dr. Mary McLeod Bethune Boulevard • Daytona Beach, FL 32114-3099
386.481.2540 • Fax 386.481.2052
www.bethune.cookman.edu

## NCAA PRINCIPLES OF ETHICAL CONDUCT

NCAA Bylaw 10.01.1 Honesty and Sportsmanship. Individuals employed by and associated with Bethune-Cookman University or any other NCAA member institution to administer, conduct or coach intercollegiate athletics and all participating athletes shall deport themselves with honesty and sportsmanship at all times so that intercollegiate athletics as a whole, their institutions and they, as individuals, shall represent the honor and dignity of fair play and the generally recognized standards associated with wholesome competitive sports.

NCAA Bylaw 10.1 Unethical Conduct Unethical conduct by a prospective or enrolled student-athlete or an institutional staff member may include, but is not limited to, the following: (a) Refusal to furnish information relevant to an investigation of a possible violation of an NCAA regulation when requested to do so by the NCAA or Bethune-Cookman University;
(b) Knowing involvement in arranging for fraudulent academic credit or false transcripts for a perspective or an enrolled student-athlete:(c) Knowing involvement in offering or providing a prospective or an enrolled student-athlete an improper inducement or extra benefit, or
(d) Knowingly furnishing the NCAA or Bethune-Cookman University false or misleading information concerning the individuals, involvement in or knowledge of a violation of matters relevant to a possible violation of an NCAA regulation.

I hereby acknowledge that as a condition of my employment at Bethune-Cookman University I will faithfully comply fully with all NCAA and University regulations as they relate to my job performance and the general operation of University business. I also understand and accept that breach at the above listed NCAA rules or any others will be factored into my annual performance evaluation and can serve as basis for immediate termination of my employment at Bethune-Cookman University.

_Cliffred Reed Jr._
Print Name of Employee

_[signature]_                    4/28/09
Signature of Employee            Date



# BETHUNE-COOKMAN UNIVERSITY

Founded in 1904 by Dr. Mary McLeod Bethune          Trudie Kibbe Reed, Ed.D., President

June 27, 2011

OFFICE OF THE PRESIDENT

<u>Via Hand-Delivery</u>
Mr. Clifford Reed, Jr.
1520 5th Street
Daytona Beach, Florida 32117

Dear Mr. Reed:

Please be advised that the University has decided not to offer you a new employment contract as head men's basketball coach, and your employment as head men's basketball coach is terminated effective immediately. This decision is based on your failure to cooperate and insubordination with respect to the University's investigation into allegations against the University and its men's basketball program. You shall receive your final compensation through July 31, 2011.

You must immediately relinquish all keys and return all University property to Mr. Lynn Thompson, Athletic Director. Should you have any items of personal property on campus, please advise Lynn Thompson. Arrangements will be made to return them to you. You are not allowed to remove any property that belongs to the University.

Please contact Mrs. Elvira Wolford, Benefits Coordinator at 386-481-2051 regarding any ...tion benefit(s) information.

Sincerely,

*Trudie Kibbe Reed/PAS*

Trudie K. Reed, Ed.D.
President

Cc: Dr. E. Dean Montgomery, Executive Vice President/Chief Operating Officer
    Pamela Browne, Esq., University Counsel
    Mr. Lynn Thompson, Athletic Director
    Mrs. Rusha Sullivan, Payroll
    Mrs. Sharon Burill, Payroll
    Mrs. Elvira G. Wolford, Benefits Coordinator
    Mrs. Cynthia J. Hawkins, M.Ed., SPHR, Director, Human Resources Management

*SUSTAINING A LEGACY OF FAITH, SCHOLARSHIP AND SERVICE*

640 Dr. Mary McLeod Bethune Boulevard • Daytona ——————, FL 1-3099 • 386.481.2001 • Fax: 386.481.2010 • www.bethune.cookman.edu